[Civil No. 1190.  Filed April 29, 1912.]

[123 Pac. 309.]

# LITTLE BUTTE CONSOLIDATED MINES COMPANY, a Corporation, Plaintiff in Error, v. JAMES B. GIRAND, Defendant in Error.

1. APPEAL AND ERROR—JURISDICTION OF APPELLATE COURT—BOND ON APPEAL.—To confer jurisdiction on the appellate court, appellant must file the bond on appeal within twenty days after adjournment of the term at which the judgment was rendered.

2. APPEAL AND ERROR—INEFFECTIVE APPEAL—DISMISSAL—SUBSEQUENT WRIT OF ERROR.—Where a party undertaking to appeal from an adverse judgment filed a record complete except that the bond on appeal was not filed in time, and the appeal on his motion was dismissed without prejudice, and on the following day appellee filed a motion to dismiss the appeal, and appellant filed a petition for writ of error and caused summons to be issued and served on appellee, and appellant occasioned no unnecessary delay by pursuing the two methods to review the judgment, the writ of error would not be dismissed.

3. CORPORATIONS—OFFICERS—POWERS.—Where the articles of incorporation provide that the affairs and business of the corporation shall be conducted and controlled by a board of directors, the president and secretary may not dispose of all the property, in the absence of authority conferred by the stockholders.

4. CORPORATIONS—OFFICERS—POWERS.—A contract executed by the president and secretary of a corporation, without authority from the stockholders, which provides for the disposition of all the property of the corporation to the other party thereto, and a subsequent contract executed by the same officers, which stipulates for the employment of the transferee for a monthly salary, and which declares that in case of nonperformance by the corporation of its part of the contract it shall deliver to the transferee a new contract for an option to purchase all the property of the corporation, are not enforceable except to the extent that the transferee may recover the stipulated salary for services actually performed under the subsequent contract.

5. CONTRACTS—MUTUALITY.—A contract of employment, though in its inception lacking the mutuality to constitute a valid contract, is binding in so far as it has been performed by the employee.

6. CORPORATIONS—CONTRACT OF EMPLOYMENT—AUTHORITY OF OFFICERS. The president and secretary in the active control of the business of a corporation may employ the necessary help to carry it on.

7. MASTER AND SERVANT—BREACH OF CONTRACT—MEASURE OF DAMAGES.—Where an employee for a year at a monthly salary was wrongfully discharged after he had rendered services for a part of the year, and he treated the contract as an existing contract for salary earned, he could recover the salary specified for the services actually performed; but he could not recover the specified salary during the period after his discharge up to the time of the commencement of the action.

8. MASTER AND SERVANT—BREACH OF CONTRACT—MEASURE OF DAMAGES. An employee wrongfully discharged from service must accept employment elsewhere if obtainable, and he cannot recover the stipulated salary subsequent to his discharge on the theory of constructive service.

WRIT OF ERROR from the District Court of the Third Judicial District, in and for the County of Maricopa. Edward Kent, Judge. Judgment modified.

The facts are stated in the opinion.

Messrs. Alexander & Christy and Mr. Wm. M. Seabury, for Plaintiff in Error.

Messrs. Kibbey, Bennett & Bennett, for Defendant in Error.

ROSS, J.—This is an action brought by James B. Girand against the Little Butte Consolidated Mines Company, a corporation, J. E. Meyer and George W. Bishop. Omitting the formal parts, the material allegations of the complaint are as follows: "That on, to wit, the sixteenth day of March, 1909, the plaintiff entered into a contract in writing with the defendant corporation under the name and style of Arizona Bouse Copper Company, by virtue of which contract the said defendant corporation granted to plaintiff the right, privilege, and option to purchase from the defendant corporation certain valuable mines, mining claims, and property, the property of the said defendant corporation, for the sum of two hundred twenty-five thousand ($225,000.00) dollars upon the terms and conditions set forth in said contract in writing, a copy of which is attached to and is made a part of plaintiff's 'Exhibit 1,' attached to this complaint, and hereinafter mentioned. That on April 1st, 1909, the said contract being in full force and effect, and the defendants being desirous of securing a surrender and cancellation of said con-

tract, the said defendants entered into a contract in writing with this plaintiff, a copy of which is hereto attached, marked 'Exhibit 1' and made a part hereof, wherein and whereby, in consideration of the surrender by this plaintiff of all his rights under said first-mentioned contract, and for other good and valuable considerations, the said defendants did, among other things, covenant and agree with this plaintiff as follows: 'That the said Arizona Bouse Copper Company shall and hereby does employ the said Jas. B. Girand as its consulting engineer in the operation of its mining property in Arizona at a stipulated salary of $250 per month from this date payable monthly. Said salary to be increased $100.00 per month for each said one hundred feet of additional work on said property in which the ore-body is revealed, or from the time the ore-body on said property shall be reached by cross-cutting, or otherwise from each one-hundred foot level below the present level of said works which has now reached a depth of about one hundred and fifteen feet. This salary contract to continue in force for one year, but the progressive increase to cease when salary shall have reached $750.00 per month.' That this plaintiff has performed all the conditions and provisions of said last-mentioned contract on his part to be done and performed, and has tendered to the said defendant corporation his advice and services as consulting engineer in the operation and development of its said mining property, and has held himself in readiness at all times to make examinations of the working and operation and development of said mining claims, and to consult with the officers, agents, and employees of the defendant corporation and give his counsel and advice in reference thereto, and has given and rendered to the defendant corporation counsel, advice and services, in regard to its said mining operation whenever thereunto requested. . . . That on September 1st, 1909, there was due to plaintiff from the defendants, and each of them, for his salary as consulting engineer for the said defendant corporation under the terms of said contract the sum of one thousand five hundred sixteen and 65/100 ($1,516.65) dollars, and that on the day last aforesaid plaintiff demanded payment of said sum from the said defendants and that the same has not been paid or any part thereof, and that there is now due to the plaintiff from the said defendants the sum of $1,516.65 under the terms of said contract.''

To this complaint the defendant Little Butte Consolidated Mines Company interposed a general demurrer, specific denials of the execution of the contracts referred to in the complaint for want of authority in the persons making said contracts, and a general denial of the material allegations of the complaint. The defendants Meyer and Bishop were not served with any process, and the case proceeded to trial against the Little Butte Consolidated Mines Company. June 22, 1910, the defendant in error obtained judgment against the plaintiff in error for the sum of $1,250, or for five months' salary at $250 per month. The defendant undertook to appeal to this court and to that end gave proper notice of appeal. The bond on appeal was not filed within the twenty days allowed by law after adjournment of the term of court, but was filed on the twenty-first day after such adjournment.

We are asked by the defendant in error to dismiss this case for the reason that, of the two methods of bringing this case to this court for review, the plaintiff in error elected to proceed by appeal in the first instance and thereby prevented execution. It is our duty to grant this motion should it appear that the plaintiff in error adopted the two methods of obtaining a review for the purpose of delay only, or that the dismissal was for want of prosecution, or that the dismissal was on its merits. *Johns* v. *Phoenix Nat. Bank,* 6 Ariz. 290, 56 Pac. 725.

The reason for the dismissal of the appeal was because the appeal bond was not filed within the time allowed by law. This court has in many cases held that, in order to confer jurisdiction upon the appellate court, the bond on appeal should be filed within twenty days after the adjournment of the term of court in which judgment is rendered. Thus it will be seen that the appellate court did not acquire jurisdiction of the case on appeal.

January 9, 1911, appellee filed in this court his motion to dismiss the appeal for the reason that no appeal bond had been filed as provided by law. January 10, 1911, appellant filed its motion to dismiss the appeal without prejudice and asked permission to withdraw the files and records in the case, which motion was granted. The record on appeal was complete in all respects, except that the bond was not filed within time. January 11, 1911, plaintiff in error filed in the lower

court its petition for writ of error, and on the same day caused the summons to be issued and served on defendant in error. The present case was at issue in this court on February 20, 1911; the briefs of both parties having been filed on that day or before.

It is not apparent to us that plaintiff in error has occasioned any unnecessary delay in this case by pursuing the two methods.   On the contrary, it dismissed its appeal on the first opportunity after the discovery of the insufficiency of the bond and, doubtless, with the view of suing out this writ of error, as it was at its request that the appeal was dismissed "without prejudice."   We think the record shows that the plaintiff in error has acted in good faith.   Therefore the motion to dismiss is denied.

The contracts referred to in plaintiff's complaint were executed in behalf of the defendant corporation by its president and secretary without any previous authorization by the stockholders of the corporation, and were never ratified by the stockholders or by the corporation.   June 15, 1909, at a meeting of the stockholders, both of said contracts were repudiated for the reason that the president and secretary were not authorized to make such contracts.

The plaintiff in error makes three separate assignments of error, but consideration of the first only will be given, as the others seem to be covered by it.   The errors complained of are: "That the judgment is contrary to law in that: (a) It awards a sum of money as wages under the contract sued upon, although the contract prescribed an exclusive remedy for breach thereof, which remedy is not an action for wages. (b) It awards defendant in error the sum of $750 as wages for the executory portion of the contract, although such portion of the contract was and is void for want of mutuality and for want of consideration.   (c) It allows defendant in error to recover $750 as wages for June, July, and August, 1909, for services only constructively and not actually performed and rendered."

Apropos of the first proposition above, the contract of April 1st provided that, in case of a nonperformance of its conditions, the Little Butte Consolidated Mines Company should execute and deliver to Girand a new contract of option to purchase the mining property described upon the same terms and

conditions as contained in the contract of March 16th, excepting only that the first payment should be made within thirty days after notice of such default and demand for contract of option by Girand.

As we view the law, both the contract of March 16, 1909, and the contract of April 1, 1909, were not enforceable, except to the extent of the plaintiff recovering the salary stipulated for the services he actually performed under the contract of April 1st, because they were not authorized by the proper officers of the plaintiff in error, nor ratified thereafter by the stockholders or by the corporation itself.

The contract of March 16th undertook to dispose of the entire assets of the corporation and was executed by its president and secretary without any authority from the board of directors or stockholders. The plaintiff in error's articles of incorporation provide "the affairs and business of the corporation shall be conducted and controlled by a board of directors." To permit the president and secretary to dispose of all the property of the corporation would be giving them more power than the directors have. "The directors of a corporation cannot, unless thereto authorized by the shareholders, put an end to its business and defeat the objects of its creation by selling out en masse all its property and good-will, or any portion of its real estate necessary for the transaction of its customary business." 10 Cyc. 764; *Bliss* v. *Kaweah Canal & Irr. Co.*, 65 Cal. 502, 4 Pac. 507; *K. C. Hay Press Co.* v. *Devol* (C. C.), 72 Fed. 717; *Yellow Jacket S. M. Co.* v. *Stevenson*, 5 Nev. 224.

If, therefore, the contract sued on was not enforceable for lack of authority in its execution, it falls as a whole, except to the extent we have indicated in this opinion, and the proposition that the contract itself pointed out the specific and only remedy for defendant for a breach thereof is not tenable. It may be granted that the contract of April 1st, in its inception, lacked the necessary mutuality between the parties to constitute a valid and binding contract, but in so far as it was performed by the defendant in error it is binding and effective. 9 Cyc. 327; 2 Cook on Corporations, 1477.

Aside from the fact of the part performance and acceptance of the benefits of part performance of the contract by the corporation, the law is that the president and secretary in

the active control and management of the business of the company may employ the necessary help to carry it on.    *Crowley* v. *Genesee M. Co.,* 55 Cal. 273; *Peck* v. *Dexter S. P. & P. Co.,* 164 N. Y. 127, 58 N. E. 6; 10 Cyc. 909.

This suit is based on the special contract of April 1st and is for five months' wages, as stipulated in the contract.    It will be observed that this contract is for one year from April 1, 1909, and that the suit was instituted on September 27, 1909, over six months before its expiration.    The complaint alleges no breach or rescission of the contract, but does allege that the plaintiff "performed all the conditions and provisions of said contract on his part to be done and performed" and a readiness and willingness to perform; but the last allegation of "readiness and willingness" is without meaning when taken in connection with the allegation of full performance.    Any term short of a year's service would not be full performance "of all the conditions and provisions of the contract."    However, no point is made of this.    This case was tried out on the theory, by the defendant, that there was no legal contract of service and therefore no recovery could be had, and by the plaintiff on the theory that he could recover wages at the price stipulated in the contract up to the date of bringing his suit, regardless of whether he actually worked for defendant or not.    The plaintiff was discharged and his contract repudiated by the stockholders of defendant on June 15, 1909, or after the plaintiff had been in the employ of the defendant for two and one-half months, and the question is: What are his rights and remedies in respect thereto?    In *Jones* v. *Dunton,* 7 Ill. App. 580, in a very learned decision in which the authorities both for and against "constructive service" are collated and distinguished, the court said: "While the authorities bearing upon the subject are not in all respects harmonious, there appears to be a substantial concurrence upon the three following propositions: (1) That an employee discharged under such circumstances may sue at once for a breach of the contract, and recover his damages up to the time of suit brought, in which case the judgment will be a bar to any further action; (2) he may wait to the end of the contract period, and then sue for the breach, when he may recover his entire damages, and these, according to the decisions of some of the courts, will be the full amount of his wages or salary for the

whole period, less what the defendant may show the plaintiff has earned, or might reasonably have earned, from the time of his discharge to the end of the contract period; (3) he may treat the contract as rescinded and sue immediately on a *quantum meruit* for the services performed, in which case he can recover for the time actually served.''

While plaintiff in this case did not pursue any of the methods above enumerated in seeking his redress, we treat the case as coming within a fourth class, that may be added to the above. The plaintiff having treated the contract of employment as an existing contract for salary earned, we hold that he may recover the salary specified in the contract for services actually performed under it, treating it as divisible in so far as the payment of salary is concerned.

The plaintiff has undertaken to recover wages for two and one-half months in which he rendered no services and after he had actually been discharged by the defendant. This he cannot do. The doctrine of ''constructive service'' is ''so opposed to principle, so clearly hostile to the great mass of authorities, and so wholly irreconcilable to the great and beneficent rule of law, that a person discharged from service must not remain idle, but must accept employment elsewhere if offered, that we cannot accept it. . . . The doctrine of constructive service is not only at war with principle, but with the rules of political economy, as it encourages idleness, and gives compensation to men who fold their arms and decline service, equal to those who perform with willing hands their stipulated amount of labor.'' *Howard* v. *Daly,* 61 N. Y. 362, 19 Am. Rep. 285; *James* v. *Allen,* 44 Ohio St. 226, 58 Am. Rep. 821, 6 N. E. 246. That the doctrine of constructive service has been repudiated as not sound in reason or just in principle we cite the following cases: *Olmstead* v. *Dach,* 78 Md. 132, 44 Am. St. Rep. 273, 22 L. R. A. 74, 27 Atl. 501; *Kahn* v. *Kahn,* 24 Neb. 709, 40 N. W. 135; *Lichtenstein* v. *Brooks,* 75 Tex. 196, 12 S. W. 975; *Richardson* v. *Eagle Mach. Works,* 78 Ind. 422, 41 Am. Rep. 584. See, also, text-writers: 26 Cyc. 998, note 97; Sutherland on Damages, 2d ed., 475; 2 Black on Judgments, sec. 752; Woods on Master and Servant, 246; Smith on Master and Servant, 4th ed., 188; Addison on Contracts, 450, 650. Our territorial supreme court has heretofore, in *Old Dominion Copper M. & S. Co.* v. *Andrews,* 6 Ariz.

205, 56 Pac. 969, repudiated the doctrine of constructive service.

The judgment of the lower court should have been for the salary of plaintiff for April, May, and to the 15th of June, inclusive, at $250 per month, or $650.

The case is remanded to the superior court in and for the county of Maricopa, with directions that judgment be entered accordingly and that the plaintiff in error have judgment for its costs on this appeal.   It is so ordered.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.

NOTE.—As to the right of a wrongfully discharged servant to recover wages for contract period subsequent to discharge, see notes in 5 L. R. A., N. S., 439, and 28 L. R. A., N. S., 577.

As to the remedy of a wrongfully discharged servant with respect to services actually rendered, see note in 5 L. R. A., N. S., 579.

As to right of appellant to dismiss appeal, see notes in 2 Ann. Cas. 794; 11 Ann. Cas. 966.

As to unauthorized acts of corporate officers, see notes in 48 Am. St. Rep. 916; Ann. Cas. 1912D, 296; Ann. Cas. 1913B, 902; 2 Ann. Cas. 520; 18 Ann. Cas. 729; 19 Ann. Cas. 683.

As to officer's authority to employ help, see notes in Ann. Cas. 1912C, 474.

As to amount recoverable in action by servant for wrongful dismissal, see notes in 51 Am. St. Rep. 517; 13 Ann. Cas. 112.