[Civil No. 1390.    Filed June 29, 1914.]

[141 Pac. 727.]

O. K. FRANKLIN, Appellant, v. HAVALENA MINING COMPANY, a Corporation, J. WELLS SMITH, W. A. O'CONNOR, I. BURGOON, R. R. EARHART and E. D. MILLER, Appellees.

1. PLEADING—DEMURRER—EFFECT.—A demurrer admits all facts well pleaded.

2. CORPORATIONS — AUTHORITY OF OFFICERS. — Neither the president, secretary nor general manager of a corporation has power merely by virtue of his office to lease or sell the property of the corporation, and such a lease, when not ratified by the board of directors, is not binding.

    [As to authority of officer to represent corporation as inferred from manner in which he has been permitted to act, see note in Ann. Cas. 1913D, 646.   As to implied authority of secretary of corporation to act for or bind the company, see note in Ann. Cas. 1912D, 296.]

3. CORPORATIONS—LEASES OF CORPORATE PROPERTY—EFFECT.—Where defendant obtained control of property of a corporation by virtue of a lease which, because executed without authority from the board of directors, by the president, secretary and general manager of the corporation, was ineffective, defendant could by his possession acquire no equity as against the corporation or its stockholders.

4. CORPORATIONS—AUTHORITY OF MAJORITY STOCKHOLDERS.—Courts of equity will restrain the majority stockholders of a corporation from using their power as such to ratify an illegal lease and sale of corporate property at less than one-tenth of its value.

5. CORPORATIONS—ACTION BY STOCKHOLDER—PLEADING—OFFER TO DO EQUITY.—A complaint by a stockholder of a corporation seeking to set aside a lease of the corporate property on the ground that the lease was illegal and fraudulent need not contain an offer to do equity, where it did not show that defendants had made any expenditures under the lease or had paid any of the rent reserved.

6. CORPORATIONS—ACTION BY STOCKHOLDER—PLEADING—OFFERS TO DO EQUITY.—A complaint by a stockholder of a corporation, seeking to set aside a lease of corporate property, not authorized by the directors, need not offer to return to defendant, who entered into possession under the lease, money expended pursuant to the lease or paid as rent reserved, for that is a matter of defense, and the court, in making its decree, will protect the rights of defendant.

APPEAL from a judgment of the Superior Court of the County of Santa Cruz.  Carl G. Krook, Judge.  Reversed and remanded.

### STATEMENT OF FACTS BY THE COURT.

We adopt appellant's statement of the facts as being full and correct:

"This is an action brought by a stockholder of a corporation, on behalf of himself and all other stockholders, to right certain wrongs to the corporation; the corporation itself, and its directors, having refused to sue.  Demurrers to the complaint were filed, which demurrers were sustained on the ground that plaintiff 'had nowhere in his complaint offered to do equity.'  Plaintiff refused to amend.  Judgment was rendered against him, dismissing his complaint on the ground that 'there is no equity therein,' and for costs.  From this judgment the plaintiff appeals to this court.

"The allegations of the complaint are briefly as follows: That, at all the times mentioned therein, plaintiff was a stockholder of Havalena Mining Company, a corporation, which company owned the Santa Nino, and five other mines described in the complaint.  That on August 5, 1912, F. O. Stow, George D. Gross, and I. Burgoon, attempting to act as president, manager, and secretary, respectively, of said company, did, without authority of the board of directors or stockholders, and without any authority whatsoever, unlawfully execute and deliver to James Culley, Joseph Brown, and T. Vastine a certain instrument, denominated a lease and bond, in the words and figures following, to wit:

" 'Mowry, Arizona, August 5, 1912.

" 'Havalena Mining Company, party of the first part, and Joseph Brown, James Culley and T. Vastine, party of the second part.  The party of the first part agrees to lease and bond the following named claims situated in Patagonia mining district, Santa Cruz county, state of Arizona: Santa Nino mining claim, Santa Nino Number One, Santa Nino Number Two, Santa Nino Number Three, Santa Nino Number Five, and the Side Issue mining claim, to the party of the second part, the party of the second part to pay ten thousand dollars lawful money of the United States in three payments,

the first payment August 5, 1913, the second payment August 5, 1914, the third payment August 5, 1915. The party of the second part agrees to pay 10% of net smelter returns, to apply on said payments as they become due, the first payment ($2,000) two thousand dollars August 5, 1913, the second payment ($4,000) four thousand dollars August 5, 1914, the third payment August 5, 1915, the balance of ($4,000) four thousand dollars, the party of the first part to put deeds in the First National Bank of Nogales, Arizona; the party of the second part to deposit the payments in the First National Bank of Nogales, Arizona. The party of the second part agrees to file affidavit of assessment work on or before November 15th, 1912, on or before July 1st, 1913, on or before July 1st, 1914.

" 'President Havalena Mining Company,
" 'F. O. STOW.

" 'Manager Havalena Mining Company,
" 'GEO. D. GROSS.
" 'JOSEPH BROWN.
" 'JAMES CULLEY.
" 'ALAN VASTINE.

[Seal]                                  " 'I. BURGOON,
" 'Secy. Havalena Mining Company.'

"That thereafter, and on the 27th day of September, 1912, T. Vastine assigned to defendant J. Wells Smith a one-fourth interest in said lease and bond; and on October 15, 1912, Culley, Brown, and Vastine assigned to George D. Gross an undivided one-fourth interest therein. That some time prior to January 6, 1913, Culley, Vastine, Brown, and Gross assigned all their interest therein to defendant J. Wells Smith, and ever since said J. Wells Smith has been and is the sole owner of the lease and bond. That Culley, Brown and Vastine entered into possession of the mines, claiming their right so to do under said lease and bond until J. Wells Smith became an owner of an interest in the lease and bond, when he joined them in the possession thereof. That thereafter, and some time prior to January 6, 1913, the said J. Wells Smith, as the sole owner of the lease and bond, took exclusive possession of the mines, and now is in possession thereof, extracting ores therefrom and applying the same to his own use and benefit. That the action of Stow, Gross and Burgoon in exe-

cuting the lease and bond was without any authority from the corporation, was without authority from the board of directors or the stockholders, and without any authority whatsoever, and their said act is absolutely null and void, and in no way binding upon the said defendant corporation.''

"That on November 11, 1912, the board of directors of said corporation, at a meeting duly held on said day, did disaffirm, disapprove and did refuse to ratify, recognize or confirm the action of said Stow, Gross and Burgoon in executing said lease and bond, and did disavow, disaffirm and disapprove of the same; and that on the same day, at a duly called meeting of the stockholders of said company, the stockholders did likewise disapprove, disaffirm and disavow the same.

"That thereafter, and in the same month of November, the said corporation did bring suit before the superior court of Santa Cruz county, Arizona, against said J. Wells Smith, Culley, Brown and Gross, by filing complaint, wherein the above matters and things were set forth and alleged, and wherein said company did seek to have said lease and bond declared to be utterly void and of no effect, and not binding upon it, and did seek 'to obtain an injunction restraining said defendants from withholding possession of said mining claims from it, said corporation, and from in any manner working the same or extracting or selling ores therefrom.'

"That while said suit was pending, said J. Wells Smith did purchase, or otherwise acquire, all the interest of his co-owners, Culley, Brown, Gross and Vastine, in said lease and bond; and did also, after said suit was brought, purchase more than a majority of the issued and outstanding shares of the capital stock of said corporation, for the purpose of controlling the board of directors of said corporation so as to have said suit dismissed and said lease and bond ratified; and that, having obtained such control, he caused the said suit to be dismissed.

"That the sum of $10,000, being the purchase price set forth in said lease and bond, was grossly inadequate as the bonding price of said property. That other responsible parties, at the time said lease and bond were executed, were, and since have been, willing to take a lease and bond thereon at a price in excess of $100,000, and on more advantageous terms to the corporation and stockholders. That said Smith knew

that responsible parties were willing to take a lease and bond thereon at a price in excess of $100,000, but said Smith, for the purpose of defrauding the stockholders of the corporation, and for the purpose of acquiring himself the title to said mining claims at a price far less than the value thereof, did purchase, for a comparatively small sum of money, more than a majority of the issued shares of stock, and then, at the stockholders' meeting on the 6th day of January, 1913, by his own vote, as the holder of more than a majority of said stock, did cause a resolution to be adopted ratifying said lease and bond, and directing said suit to be dismissed; and did also, at said meeting, cause a board of directors to be elected who were under his control and subservient to his interest (the resolutions as offered and the vote thereon being fully set forth in the complaint). That said resolution would not have been adopted but for the vote of said Smith. That thereafter, and on said 6th day of January, 1913, the board of directors so elected by said Smith did hold a meeting, said Smith being himself then one of the directors and present at the meeting, whereat the said directors, at the request and direction of said Smith, and being under his control and influence, did adopt a resolution ordering the dismissal of the said suit, aforesaid. That the action of the said board of directors was a fraud upon the stockholders, and was done at the instance and request of said Smith so that he might acquire said property at less than one-tenth of its value, and deprive the other stockholders of their rights therein. That thereafter said Smith did cause said case to be dismissed.

"That said defendant Smith is now in possession of said mining claims, claiming his possession and right of possession under said lease and bond. That he is working said mines and extracting ore therefrom, and that, unless enjoined, he will continue to work the same and extract ore therefrom, and keep possession thereof under said lease and bond.

"That said defendant Smith still owns the majority of the issued stock, has absolute control of the corporation and directors, and that it is necessary to have a receiver appointed to take possession of all the property and assets of the corporation, and to sell the same under direction of the court. That prior to the commencement of the suit plaintiff made demand upon the corporation and directors, requesting them

to bring suit to have said lease and bond annulled and to prevent said Smith from operating said mines, extracting ore therefrom, and from claiming any interest therein.    That the corporation and directors have refused to bring such suit.

"Wherefore plaintiff prays: (1) That the lease and bond be declared null and void; (2) that defendant Smith, and all persons claiming under him, be enjoined from claiming any rights under said lease and bond, and that the same be canceled; (3) that defendant Smith, and all persons claiming under him, be enjoined from keeping possession of said property and from working the same and extracting ores therefrom; (4) that a receiver be appointed to take possession of and to sell all said property, and to take charge and control of the corporation, and that the corporation be dissolved; and for such other relief as may be equitable and for costs.

"To this complaint J. Wells Smith for himself, and all the other defendants jointly, filed demurrers on the ground that the complaint does not state facts sufficient: (1) 'To constitute a cause of action; (2) to show any legal or equitable right to the relief demanded in the complaint as against any of the defendants'; (3) to entitle the plaintiff to the relief prayed for in the complaint, or to any relief against defendants, or any of them; (4) defect of parties in not making Brown, Culley and Vastine parties defendant.

"The demurrer for defect in parties was waived by defendants in open court.

"The court sustained the demurrers (2) and (3) that the complaint does not state facts sufficient and does not show facts sufficient to entitle plaintiff to the relief prayed for in his complaint, or to any relief as against any of the defendants.

"Plaintiff refused to amend, and judgment was rendered against him, dismissing his complaint and for costs.    From this judgment plaintiff has appealed to this court."

Mr. Selim M. Franklin, for Appellant.

Mr. Frank J. Duffy and Mr. Sylvester S. Downer, for Appellees.

ROSS, J.—The appellant complains of the ruling of the court in sustaining demurrers and entering judgment of dis-

missal. The reason given by the court for sustaining demur-
rers was "that the plaintiff has nowhere in his complaint
offered to do equity," and upon plaintiff's refusal, after per-
mission was granted by the court, to "insert in his complaint,
by amendment, an offer to do equity or an offer, upon the
ascertainment upon the trial, to make such equitable restitu-
tion to the defendants upon a decree as should be adjudged by
the court." The reasons given by the court for his rulings
are relied upon by appellees, in brief and oral argument, as
being supported by the law and as demanding the ruling and
judgment made. No other objection to the complaint is sug-
gested or argued. We will therefore confine ourselves to the
consideration of the one point raised; that is, under the facts
of this case, was it necessary, in order to state a good cause
of action, that the plaintiff should have offered in his com-
plaint "to do equity" or "to make such equitable restitution
to defendants upon a decree as should be adjudged by the
court"? Of course, it goes without saying, if the inclusion
of such a declaration by the plaintiff in his complaint was
unnecessary to his cause of action, he had a perfect right to
refuse and decline to make the amendment, and to elect to
stand on his complaint as filed.

When a pleading is demurred to, all of the facts well
pleaded are admitted as true. Then, in this case, it is ad-
mitted that the contract set forth in the complaint as exe-
cuted by the president, the manager and the secretary of the
appellee Havalena Mining Company was executed by such
officers without authority of the board of directors or stock-
holders, and that such contract was disaffirmed, disapproved
and disavowed by the board of directors and stockholders at
duly called meetings on November 11, 1912, some nine months
before the first payment of $2,000 was due; that J. Wells
Smith and his assignors took possession of the mining claims
under and by virtue of the contract of August 5, 1912; that
J. Wells Smith, as the assignee of said contract, became the
sole owner of all the interests conveyed by contract, having
purchased the rights of Brown, Culley and Vastine some time
prior to January 6, 1913; that J. Wells Smith, at the time of
the institution of this suit, had exclusive possession of the
mines, and was extracting ores therefrom and applying the
same to his own use and benefit; that the Havalena Mining

Company in November, 1912, and after the board of directors and stockholders had repudiated the contract of August 5, 1912, instituted suit in the court possessing jurisdiction against Smith, Culley, Brown and Gross to have contract declared null and void, and to restrain defendants in said action from working the mines or extracting or selling ores therefrom, and from withholding the possession of mines from plaintiff corporation; that while such suit was pending defendant Smith purchased or otherwise acquired, the whole interest in said contract, and also for a comparatively small sum of money purchased more than a majority of the issued and outstanding stock of the corporation, and at a stockholders' meeting January 6, 1913, by his own vote as the holder of a majority of said stock, did cause a resolution to be adopted ratifying the contract of August 5, 1912, and directing the dismissal of said suit, and at said meeting of stockholders likewise did elect a board of directors who were under his control and subservient to his interest, which said board of directors thereafter and on the same day, at the request and direction of Smith, who was one of the directors, did adopt a resolution ordering the dismissal of said suit; and that thereafter the said Smith caused said suit to be dis- missed; that $10,000 was grossly inadequate as a bonding price of said mines; that at the time that said contract of August 5, 1912, was made, and since, other responsible parties were willing to take the mining properties on a lease and bond at a price exceeding $100,000 and on more advantageous terms to the corporation and stockholders, of which defendant Smith had knowledge; that said Smith bought the stock of the corporation to secure control and, by means thereof, to obtain said mines at less than one-tenth of their value, and thereby deprive the other stockholders of their rights therein; that the corporation and its directors have been requested to bring suit to right the alleged wrongs; and that they have refused to do so.

The first admission, and an important one, is that the defendant Smith and his assignors entered into the possession of the mines under and by virtue of the instrument of August 5, 1912, designated ''a lease and bond,'' and that such instrument was not the act and deed of the corporation, but the act and deed of certain of the corporation officers, without

authority from the board of directors or the stockholders or otherwise. Such being the admission, it follows as a legal proposition that the possession acquired by Smith and assignors was without right. Cook on Corporations, sixth edition, section 716, says:

"The president of a corporation has no power, by reason of his office alone, to buy, sell or contract for the corporation, nor to control its property, funds or management."

See, also, Thompson on Corporations, second edition, sections 1464, 1470.

"The secretary of a corporation has no power, merely as. secretary of the company, to make contracts for it." Cook on Corporations, sec. 717.

A general manager of a corporation has no power merely by virtue of his office to do "anything out of the usual course of business" of his company.

"The general manager does not displace them [directors], and a person dealing with the corporation is bound to take notice of that fact." *Id.*, sec. 719.

None of the officers who signed the contract of August 5th, nor all of them together, could bind the corporation merely because they were officers. The instrument was not the act. and deed of the corporation.

In *Little Butte Con. Mines Co.* v. *Girand,* 14 Ariz. 9, 123 Pac. 309, we held that a contract of sale of the corporation's. mines made by the president and secretary, without authority from the board of directors, was ineffectual. The same learned author (Cook), at section 712, says:

"All contracts of a corporation are to be made by or under the direction of its board of directors. The board of directors may make corporate contracts by a regular vote of the board; or by authorizing an agent to make them; or by allowing an agent to assume and exercise that power; or by accepting a contract or its benefits after it has been made by an unauthorized agent. And in all cases the board of directors, and not the stockholders, nor the president, secretary, treasurer or other agent, is the original and supreme power in corporations to make corporate contracts."

The most that could be said for the contract through which Smith claims is that it was capable of being ratified by the corporation, whereupon it would become binding. But it was.

not ratified; it was repudiated by the directors and stockholders, and suit was instituted by the corporation itself against the present defendants and others to have it declared null and void.

The defendant Smith and his assignors, upon the showing to this point, were working the mines and extracting the ores therefrom against the will of the owner, and without any legal right or authority. They had not, nor could they under the state of facts to this point acquire, any equities in the property or growing out of their unlawful contract as against the corporation or plaintiff stockholder.

The defendant Smith had a perfect right to purchase a majority of the issued and outstanding stock of the corporation, and to elect a board of directors of his own choice, but he ought not be permitted to use the power thus acquired to force from the corporation a contract of sale of all of its property to him for what admittedly is only one-tenth of its value. Neither by such a course of conduct should he be permitted to initiate rights or acquire equities in the mines as against the corporation or a nonconsenting minority stockholder. The ratification of an unauthorized contract of sale for such a grossly inadequate price when obtained, as in this case, lends nothing to the validity of such a contract when properly challenged in a court of equity by the corporation, or, upon its refusal, by a stockholder. To sanction such a proceeding would be equivalent to saying that a majority stockholder and director of the corporation could compel a sale of all the assets of his company to himself at his own price and on his own terms. In *Ervin* v. *Oregon Ry. & Nav. Co.*, 27 Fed. 625, 631, the court said:

"When a number of stockholders combine to constitute themselves a majority in order to control the corporation as they see fit, they become for all practical purposes the corporation itself, and assume the trust relation occupied by the corporation toward its stockholders. . . . When several persons have a common interest in property, equity will not allow one to appropriate it exclusively to himself, or to impair its value to the others. Community of interest involves mutual obligation. Persons occupying this relation toward each other are under an obligation to make the property or fund productive of the most that can be obtained from it for all who

XVI Ariz.—14

are interested in it; and those who seek to make a profit out of it at the expense of those whose rights in it are the same as their own are unfaithful to the relation they have assumed, and are guilty at least of constructive fraud. *Jackson* v. *Ludeling*, 21 Wall. 616, 622 [22 L. Ed. 492]; Story, Eq., sec. 323.''

In *Backus* v. *Brooks*, 195 Fed. 452, 454, 115 C. C. A. 354, 356, it is said:

''Courts of equity have no more valuable function than to protect minority stockholders from the frauds of the majority. When majority stockholders dispose of the property of the corporation which they control in such a manner as to deprive the minority of their just rights in it, there is a breach of trust, and a court of equity is the tribune, and the only tribune, to provide an effective remedy. As said by the circuit court of appeals for the eighth circuit in *Jones* v. *Missouri-Edison Electric Co.*, 144 Fed. 765, 771, 75 C. C. A. 631, 637: 'Any sale of the corporate property to themselves, any disposition by them of the corporation or of its property to deprive the minority holders of their just share of it, or to get gain for themselves at the expense of the holders of the minority of the stock, becomes a breach of duty and of trust which invokes plenary relief from a court of chancery.' ''

The complaint fails in its recitals to disclose a single equity in favor of defendant Smith. True, it set out in full the contract upon which he stands and defends. The second party, of whom Smith is the assignee, agreed to pay $10,000 for the mines, $2,000 August 5, 1913, $4,000 August 5, 1914, $4,000 August 5, 1915, and agreed to file affidavit of assessment work on or before November 15, 1912, on or before July 1, 1913, and on or before July 1, 1914, and to pay first party 10 per cent of net smelter returns to apply on payments as they became due. If anything has ever been paid on the agreed purchase price by smelter returns or otherwise, to the corporation or plaintiff stockholder, it is not ascertainable from the allegations of the complaint. It is not shown that defendant Smith or his assignors ever performed the inexpensive and mechanical act of filing affidavits of assessment work, as agreed.

If nothing has been paid the corporation or plaintiff on the purchase price, and if, as alleged, defendant is working the

mines and extracting the ores therefrom and converting them to his own use and benefit, what offer of equity can plaintiff make, or what could the corporation make if it were suing? Looking at the matter from another viewpoint, we will assume, although there is nothing in the complaint to justify it, that the defendant has paid the agreed purchase price as it became due to the corporation, and that the corporation now has $2,000 of the purchase price in its treasury; still we are confronted with the proposition that the defendant Smith is, in fact, the corporation in practically all respects, except in name. He owns a majority of the stock; the board of directors are of his selection and, according to the complaint, do his bidding. If that is true, why should the plaintiff be required, as a condition of maintaining this suit, to repay or offer to repay to defendant Smith the $2,000, for, if he has control of the corporation, he has control of its funds, or why should he be required to tender into court the moneys expended by defendant Smith in working and developing the mines when his complaint shows that defendant is appropriating to his own use the values taken therefrom, or why should he tender the 10 per cent net smelter returns if any have been paid, or the value of the assessment work, if any, has been done?

We do not find it necessary to answer these questions in passing upon the sufficiency of the complaint. The conditions implied by the questions are not to be found in the complaint, and, should they arise upon issue taken, the court will be possessed of ample powers to require the doing of equity. It would be an idle thing to require the plaintiff to insert in his complaint "an offer to do equity," or to abide the judgment of the court. Those things the court will compel. The plaintiff is asking nothing inequitable. If the things set forth in the complaint are true, and, as here presented, we must so consider them, the possession of defendant Smith is tortious, and everything that he and his assignors have done concerning the mines in the way of working and extracting ores has been against the active opposition of the corporation and plaintiff. To require the plaintiff to tender defendant these expenditures before permitting him to prosecute his suit would be the height of inequity as it would indorse the proposition of forcing the owner of property to repay a trespasser moneys

expended by him on the property, as a condition precedent to the right of recovery.

Judgment is reversed and cause remanded, with directions that defendants' demurrers be overruled.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.