JOHN J. WILLIAMSON vs. WARREN S. HILL.

Suffolk. March 3, 1891. — June 25, 1891.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON,
& LATHROP, JJ.

*Contract of Sale — Conditional Agreement — Demurrer.*

A contract in writing, dated April 26, 1887, for the sale by W. to H. of letters pa-
tent for a manufacturing process not yet made a commercial success, stipulated
as one of the conditions of sale that H. or his assigns should pay to W., his heirs
or assigns, $2,500 in one year from May 1, 1887, and on the same day in years
following other sums with that aggregating $250,000, " it being understood and
provided " that, if any such payment when due and demanded was not paid or
tendered within sixty days after such demand, the contract was to be void. The
contract also provided that H. might at any time within twenty years of May 1,
1887, pay $100,000 to W., and acquire a complete title to the patents, and, fur-
ther, that H. might assign it to any person or corporation subject to the condi-
tions of payment, and if such assignee should make payment " at or before the
conclusion of any calendar year," or should " make the special single payment
on or before May 1, 1889, as above stipulated," the sale was to inure to his or
its benefit, otherwise the contract was to determine. The first payment men-
tioned in the contract was duly demanded of H. on May 1, 1888, and was not
paid by him within the time limited, and an action was brought against him by
W. to recover the same. *Held,* that the contract did not constitute an absolute
sale to the defendant, but merely secured to him certain rights in the patent,
which were to be kept alive by annual payments or lost by failure to make the
same; and that the action could not be maintained.

CONTRACT. The declaration alleged that the plaintiff made a
contract in writing with the defendant, for a good and valuable
consideration, on April 26, 1887, a copy of which was annexed
to the declaration, in and by which the defendant undertook to
pay to the plaintiff, his heirs or assigns, the sum of $2,500 in
one year from May 1, 1887, and, further, in case this payment
became due and was demanded and not made or tendered within
sixty days of such demand, the contract was to be void and of
no effect from the date so determined; that such payment of
$2,500 became due and was duly demanded on or about May 1,
1888, and was not made or tendered within the time limited, that
is to say, on or before July 5, 1888; that the defendant had not
assigned the contract, but in pursuance of the provisions thereof
had returned to the plaintiff the assignment of the patents re-

ferred to in the contract annexed and theretofore made by the plaintiff; "and that the executory part of said contract annexed has been forfeited and rescinded, but that the payment of twenty-five hundred dollars ($2,500) therein referred to, is still due." The copy of the contract annexed to the declaration, which was dated April 26, 1887, and was under seal and signed by the plaintiff and the defendant, was as follows:

"Whereas John J. Williamson, of Boston, in the county of Suffolk and State of Massachusetts, has heretofore obtained letters patent of the United States and Canada for certain electric conducting wires, and for the method or process of manufacturing said wires, which letters patent are of date, number, and title as follows, viz." Here followed a list of four United States patents, three of which were issued in April and June, 1884, of one Canadian patent, and of an application then pending for a United States patent, with the date, number, and title of each. "Whereas said Williamson is desirous that the aforesaid inventions and methods of manufacture shall be manufactured and put in use; and whereas Warren S. Hill, of Hyde Park, in the county of Norfolk and State of Massachusetts, is desirous of acquiring the aforesaid inventions and the exclusive right to manufacture and sell under the said patents, —

"Now this agreement witnesseth: that for the consideration of one dollar ($1) paid by said Warren S. Hill to said Williamson, the receipt whereof is hereby acknowledged, and for other valuable considerations hereinafter specified, said Williamson contracts and agrees to assign, sell, and set over, and by these presents does hereby assign, sell, and set over unto said Warren S. Hill, his heirs and assigns, all the said letters patent now granted to him as hereinbefore described and enumerated, and also the United States letters patent which have been applied for (if allowed), viz. of serial number 137,262, filed July 9, 1884, entitled 'Electrical conductors or for the manufacture thereof.' And said Williamson further agrees to assign, sell, and set over unto said Warren S. Hill, his heirs and assigns, any inventions or improvements he may hereafter make in electric conducting wires, and all patents that may hereafter be obtained by him in the United States and the Dominion of Canada for electric conducting wires, composed of copper and steel or iron, or copper

and copper compounds, so long as the terms of this contract and agreement shall be fulfilled, and during the life or term of existence of the hereinbefore named letters patent. And said Williamson agrees to take out letters patent for all such inventions and improvements as he may hereafter make in electric conducting wires, and assign the same to said Hill or his assigns, provided the said Hill or his assigns shall pay the customary expenses incurred in obtaining said letters patent. And it is further expressly agreed, that if the said Williamson shall make any invention or improvement in said electric conducting wires, and shall neglect or refuse to make due application for letters patent thereon, and to assign said inventions and improvements and the letters patent obtained thereon to said Hill or his assigns, then and in that case all the payments hereinafter mentioned which shall then be due, or shall thereafter become due, shall be retained by said Hill or his assigns until such applications and assignments shall have been made by said Williamson; and the failure to make payments, hereinafter provided, during all such time as the said Williamson shall so neglect or refuse, shall not work a forfeiture of this agreement, or give the said Williamson any remedy hereunder.

" The conditions of sale, and the payments to be made, and the times and mode of so making them are hereinafter expressly stipulated as follows. Said Warren S. Hill, or his assigns, shall pay to said Williamson, his heirs or assigns, the sum of twenty-five hundred dollars in one year from the first day of May, A. D. 1887." Here followed a list of thirteen prospective payments, the first to be made in two years from that date, and the last in fourteen years therefrom, in all amounting, if the $2,500 be included, to $250,000. " It being understood and provided, that in case any of the aforesaid payments being due and having been demanded, and such payment be not made or tendered within the sixty days next succeeding such demand, (except as is hereinbefore provided,) then and in that case this contract and agreement and sale shall be null and void and of no effect from the date so determined, and the patents shall revert to said Williamson or his assigns, discharged of any obligations of whatever nature due to this contract, and of any rights to manufacture thereunder. The said payments are to be made to said William-

son, or his assigns, or to his or their duly authorized agent in that behalf, at such place as he or they may from time to time designate; and to that end said Williamson or his assigns covenant to furnish from time to time to the said Hill or his assigns the information of any change of residence that he or they may make, or any assignment he may make of his interest in the payments to be made as hereinbefore stipulated. If said Williamson or his assigns direct such payments to be made to him at any place outside of the city of Boston, Mass., a deposit of said amount in some legal depository of trust funds in the city of Boston, to the credit of said Williamson or his assigns, shall be taken and deemed a full and perfect compliance with the terms of payment herein provided for. If said Williamson or his assigns shall change his or their address, and not notify the said Hill or his assigns, then and in that case a failure to make the above named payments within the time mentioned shall not work a forfeiture of any rights under this agreement.

"It is also agreed, that if the said Hill or his assigns shall, in the manner above provided, pay or cause to be paid, or shall tender to said Williamson or his assigns, the sum of one hundred thousand dollars in cash, at any time within two years from the first day of May, A. D. 1887, the said Williamson or his assigns shall accept the same in full payment and satisfaction of all the payments to be made hereunder, and of all the obligations herein to be performed on the part of said Hill or his assigns; and the said sum shall also be accepted and received in full payment of all the above named letters patent, and of all such letters patent as the said Williamson shall hereafter make application for within the United States and Dominion of Canada, relating to electric wires, as above provided; and upon the tender in good faith of the sum of one hundred thousand dollars in cash, as above provided, to said Williamson or his assigns, within two years from May 1, 1887, by said Hill or his assigns, the title to all such patents heretofore described shall pass absolutely to said Hill or his assigns, discharged of all future payments.

"Said Warren S. Hill may assign this agreement, subject to all the conditions of payment, to any person or corporation; and in case of the payment by such assigns or their assigns, or their

successors in interest, at or before the conclusion of any calendar year, or shall make the special single payment on or before May 1, 1889, as above stipulated, the sale hereby provided for shall inure to the benefit of such assigns or persons having his or their title. But in case such payments be not made, this agreement ceases and determines, as hereinbefore provided."

Writ dated January 7, 1889.

In the Superior Court the defendant demurred, on the ground that the declaration did not set forth a legal cause of action, " for it appears from the said declaration and the copy of the contract thereto annexed that the said contract became and was null and void long before the time of the bringing of the plaintiff's action, and that nothing is due thereunder."

The case was then tried, before *Dunbar*, J., who allowed a bill of exceptions, in substance as follows.

The bill recited that, at the hearing on the demurrer, the same " was overruled, and that the defendant excepted to the decision overruling the demurrer," without more.

The bill also recited that " it appeared by the evidence that the sum of twelve hundred and fifty dollars was paid to the plaintiff, at or about the time of the execution of the contract, by one Edwin S. Thayer, and at the same time, or shortly after, the plaintiff paid two hundred and fifty dollars of this sum to the defendant Hill, in pursuance of a verbal agreement had by the plaintiff and defendant before the time of the execution of the contract; and that in all the negotiations between the plaintiff and defendant concerning the making of the contract, the plaintiff insisted on a payment being made to him at the time of the execution of the contract, and the payment was made at such time in pursuance of this agreement, which was not contained in the contract; and by such agreement it was understood that twelve hundred and fifty dollars should be paid to the plaintiff at the time of the delivery of the contract, and that two hundred and fifty dollars of that money should be paid back by the plaintiff to the defendant Hill." The wire had not been manufactured for the market, nor had it been put into any use, except for the purpose of testing its mechanical and electrical qualities, and there was evidence tending to show that this had been done to some extent, with a small quantity of wire, by the electrician

of a telegraph company. The defendant testified that the plaintiff had been, for some years before the execution of the contract, trying to get some one to undertake the manufacture of the wire referred to in the contract; and that on one occasion previously he in connection with another person had had a contract with the plaintiff concerning the purchase of the patents, which had run out. It was conceded by the defendant that the twenty-five hundred dollars which was sought to be recovered in this action had not been paid; but he contended that the payment of twelve hundred and fifty dollars made by said Thayer to the plaintiff had been accepted by the plaintiff in lieu thereof, and this question was submitted to the jury, under instructions to which no exception was taken.

The judge refused to instruct the jury, as requested by the defendant, that it was optional with the defendant whether to pay the sum of twenty-five hundred dollars stipulated in the contract to be paid on May 1, 1888, or not, and that it was his right to refuse to pay such sum, and that.if he chose to continue such refusal for sixty days after the demand was made for the payment of said sum, the contract was thereby rendered null and void, and the plaintiff could not recover the twenty-five hundred dollars sued for in this action ; but instructed them that, by a true construction of the contract, twenty-five hundred dollars became due on May 1, 1888, and that then the plaintiff was entitled to make demand for such sum, and that, if payment of the same were not made within sixty days next succeeding such demand, the contract would be rendered null and void as to all future payments, but not as to the twenty-five hundred dollars sued for in this action.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

The case was argued at the bar in March, 1891, and afterwards was submitted on the briefs to all the judges, except *Barker*, J.

*C. M. Barnes*, for the defendant.

*T. W. Clarke*, for the plaintiff.

KNOWLTON, J. The plaintiff was the owner of certain letters patent, and of an invention on which letters patent had been applied for, all for methods or processes of manufacturing elec-

trical conducting wires.   On April 26, 1887, he made a contract in writing with the defendant to sell these letters patent and inventions, and stipulated also to sell and convey any other letters patent which he should obtain or inventions which he should make for wires of similar materials during the term mentioned in the contract.   The contract proceeds in the following language :

" The conditions of sale, and the payments to be made, and the times and mode of so making them are hereinafter expressly stipulated, as follows.   Said Warren S. Hill, or his assigns, shall pay to said Williamson, his heirs or assigns, the sum of twenty-five hundred dollars in one year from the first day of May, A.D. 1887."   Then follows a statement of sums to be paid annually on the first day of May, for fourteen years from May 1st, 1887, amounting in all, including the $2,500, to $250,000.   " It being understood and provided, that in case any of the aforesaid payments being due and having been demanded, and such payment be not made or tendered within the sixty days next succeeding such demand, (except as is hereinbefore provided,) then and in that case this contract and agreement and sale shall be null and void and of no effect from the date so determined, and the patents shall revert to said Williamson, or his assigns, discharged of any obligations, of whatever nature, due to this contract, and of any rights to manufacture thereunder."   The next clause relates to the places where the payments are to be made. The next stipulates that the defendant or his assigns may at any time within two years from the first day of May, 1887, make payment or tender of payment of $100,000 in cash to the plaintiff, and that the plaintiff shall receive the same, and the title to all such patents " shall pass absolutely to said Hill or his assigns, discharged of all future payments."   The last provision is as follows : " Said Warren S. Hill may assign this agreement, subject to all the conditions of payment, to any person or corporation ; and in case of the payment by such assigns or their assigns, or their successors in interest, at or before the conclusion of any calendar year, or shall make the special single payment on or before May 1, 1889, as above stipulated, the sale hereby provided for shall inure to the benefit of such assigns or persons having his or their title.   But in case such payments be

not made, this agreement ceases and determines, as hereinbefore provided."

The action is brought to recover the first payment mentioned in the contract, which was duly demanded soon after May 1, 1888. At the trial, "it appeared by the evidence that the sum of twelve hundred and fifty dollars was paid to the plaintiff, at or about the time of the execution of the contract, by one Edwin S. Thayer, and at the same time, or shortly after, the plaintiff paid two hundred and fifty dollars of this sum to the defendant Hill, in pursuance of a verbal agreement had by the plaintiff and defendant before the time of the execution of the contract; and that in all the negotiations between the plaintiff and defendant, concerning the making of the contract, the plaintiff insisted on a payment being made to him at the time of the execution of the contract, and the payment was made at such time in pursuance of this agreement, which was not contained in the contract; and by such agreement it was understood that twelve hundred and fifty dollars should be paid to the plaintiff at the time of the delivery of the contract, and that two hundred and fifty dollars of that money should be paid back by the plaintiff to the defendant Hill." It also appeared that at the time the contract was made the wire had not been manufactured for the market, nor put to any use except for the purpose of testing its mechanical and electrical qualities, and there was uncontradicted evidence. that the plaintiff had been, for some years before the execution of the contract, trying to get some one to undertake the manufacture of the wire, and that on one occasion previously he had made a contract with the defendant concerning the purchase of the patents, which had run out.

The question before the court is, What is the true construction of the contract in regard to the payments mentioned in it? Was it an absolute sale, and did the defendant become bound absolutely to pay the sum of $250,000, or was it a contract which merely secured him rights in the patents, on his making payments from time to time, so long as he continued to pay in accordance with the contract? The defendant contends that the purpose of the contract was to enable him to experiment with the patents, and to endeavor to obtain a purchaser for them, and that the payment of twelve hundred and fifty dollars

by Thayer, who testified that he was interested in the purchase of the patents, was to secure to the defendant rights in them for one year, and that at the end of the year he had his option either to pay twenty-five hundred dollars within sixty days after a demand by the plaintiff, and thereby secure control of the patents for another year, or to decline to pay, and so make the contract "void and of no effect."

There can be no doubt that his failure to make the payment demanded terminated all his rights in the patents, and his liability for future payments. If such a failure had occurred several years later, after some of the payments had been made, it would have rendered the contract of no effect from that date; that is to say, so far as the contract had been completely executed in the making of payments it would remain in effect, but so far as it remained entirely executory, it would be terminated, and none of the payments provided for in the future could be collected. The only question of difficulty relates to the payment which had become due, either absolutely or conditionally, but remained unpaid. As to that, is the contract in force, so that it can be invoked for the collection of it? That depends on whether the payment had become absolutely due and payable before the contract became void.

It is worth while to inquire whether the parties intended this provision for the benefit of the defendant, as well as of the plaintiff. Was the defendant entitled to be free from all future liability by refusing to pay on demand, or could the plaintiff, if he saw fit, compel him to pay the whole sum of $250,000? The stipulation is absolute, that on the defendant's failure to pay, within sixty days after a demand, the contract shall become of no effect for the future; and, considering the nature of the contract, we cannot doubt that the parties intended to allow the defendant to avail himself of this provision at the end of any year, to relieve himself from future liability. This the plaintiff's counsel concedes in argument; but he says that the defendant could not relieve himself from liability for the payment which had been demanded, and which he contends had become absolutely payable on the first day of May. But the contract becomes void only after the expiration of sixty days from the plaintiff's demand for the payment; and if the plaintiff's con-

struction were correct, following literally the terms of the contract, he would have nothing to do but to decline to make a demand, and at the expiration of a year the second payment would become due, and at the expiration of another year, with no demand, the third would become absolutely due, and so on, while the defendant would have no way of avoiding an absolute liability for the whole. To hold that each payment becomes absolutely due on the first day of May, when the contract says it shall be paid, is equivalent to holding that this provision of the contract is for the plaintiff only, and that the defendant has no option if the plaintiff sees fit to hold him as an absolute purchaser.

If we look critically at the contract, we notice that the stipulation for a payment on the first day of May in each year is only one of the " conditions of sale," and is qualified by the clause beginning, " it being understood and provided." When we look at the subject matter of the contract, the situation of the parties, the apparently experimental nature of the transaction, and the payment made by the defendant in advance, we think the parties intended that each payment should be made only in case the defendant wished to keep the contract in force for his benefit, and that he was to have sixty days after a demand in which to determine whether to pay or to allow the contract to become void except as to those parts which had been fully executed. If he failed to pay, the contract would become of no effect as to the payment demanded. This appears also by the last paragraph of the contract, which gives the defendant a right to assign " this agreement, subject to all the conditions of payment, to any person or corporation," and to be relieved from further personal liability upon it by substituting another in his place. On such an assignment, the assignee would be under no direct obligation to the plaintiff, and the plaintiff would have no remedies under the contract except as it gives him security on the patents. Yet it is stipulated that on payment by such assignee, or his assigns or successors in interest, " at or before the conclusion of any calendar year," etc., the sale provided for by the contract shall inure to his or their benefit. But if the payment be not made, the agreement ceases and determines, as before provided. Under this provision,

it is clear that, if the contract should be assigned, the plaintiff could not recover a payment which should subsequently accrue and be demanded of the assignee; and the contract assumes that this part of it is identical in legal effect with that on which this action is brought.

We are of opinion, therefore, that the exceptions to the ruling at the trial should be sustained.

In passing on the demurrer to the declaration, we are obliged to consider the question presented without the benefit of the facts proved at the trial, and the solution of it is not easy. But in the contract itself, although it does not appear that the payment was made in advance, there is much to show the experimental nature of the transaction. The principal patents had been in existence about three years, as appears by the description of them, and one application for a patent was then pending, and the contract by its terms looked to future inventions to be made and patents to be obtained by the plaintiff, which were to be assigned to the defendant. Then the provision for assignment by the defendant "to any person or corporation," and the stipulation that a payment of $100,000 at any time within two years might stand instead of $250,000 to be paid year by year, indicate that this was not considered an absolute sale, with security back to the seller, but a grant of a privilege to be kept alive by annual payments, or lost on the failure to pay annually. We are of opinion that the demurrer should be sustained.

*Exceptions sustained.*