**RELIANCE LIFE INSURANCE CO. v. THAYER.**

No. 10382—Opinion Filed Dec. 13, 1921.

Rehearing Denied Jan. 10, 1922.

(Syllabus.)

1. **Insurance—Life Policy—Completion of Contract.**

When an insurance company issues a policy of life insurance and its agent de-

livers the policy to the insured and such agent thereupon receives and accepts the promissory note of said insured for the amount of the first year's premium on said policy and the agent remits in cash the amount due the insurance company, this constitutes a completed contract and creates a liability on the insurance company under the terms of the policy.

**2. Same—Cancellation of Policy—Procedure.**

When an insurance company has executed and voluntarily delivered a policy of life insurance to the insured, it cannot cancel such policy except in the manner provided in the policy, or with the consent of the insured and any person having a vested interest therein, or by an action brought for that purpose.

**3. Same.**

Where the insured has left his policy of insurance in a place where some other person has access to it, and such person, without the knowledge or consent of the insured, delivers such policy to the agent of the insurance company, who transmits it to the insurance company, any act by said insurance company attempting to cancel such policy, without the consent of the insured, is a nullity and such policy remains in full force and effect notwithstanding the attempt on the part of the insurance company to cancel the same.

**4. Same — Time for Cancellation — Incontestable Policies.**

Where a policy of insurance contains a provision: "This policy and the application therefor, a copy of which is hereto attached, constitute the entire contract between the parties. The policy contains no restrictions upon the occupation, residence or travel and shall be incontestable after one year from its date except for violation of any conditions relating to military or naval service in time of war"—an action to cancel such policy must be brought within one year from the date of said policy. When an action is brought to recover on such policy, the insurance company cannot plead as a defense, fraud in procuring the same or the falsity of answers contained in the application, unless such defense is set up within one year after the date of the policy.

**5. Same — Action on Policy — Defense of Cancellation.**

The only defenses set up in the answer are that the insured gave false answers to questions in the application which it claimed constituted fraud in procuring the policy, and that the policy had been canceled. The defense of false answers and fraud was not pleaded within one year from the date of the policy. The uncontradicted evidence shows that the only cancellation of the policy was an arbitrary act on the part of the insurance company

without the consent of the insured. Under these facts the insurance company did not establish any defense, and it would not have been error for the court to give a peremptory instruction to the jury to return a verdict in favor of the beneficiary under such policy.

**6. Same—Instructions.**

The instructions examined, and held, that no reversible error was committed in giving the instructions complained of.

**7. Same—Refusal of Request.**

The requested instruction examined, and held, that it was not error for the court to refuse to give such requested instruction.

Error from District Court, Tulsa County; N. E. McNeill, Judge.

Action by Hazel Thayer, as beneficiary in a life insurance policy issued on the life of George D. Thayer, insured, by the Reliance Life Insurance Company. Judgment for plaintiffs. Defendant appeals. Affirmed.

Poe & Lundy, for plaintiff in error.

L. J. Martin, W. J. Gregg, C. E. Baldwin, and M. C. Spradling, for defendant in error.

MILLER, J. This action was commenced in the district court of Tulsa county by Hazel Thayer, plaintiff, to recover as beneficiary the sum of $2,000 against the Reliance Life Insurance Company, a corporation, as insurer on a certain policy of life insurance issued by it on the life of George D. Thayer, husband of the plaintiff. The case was tried to a jury, which resulted in a verdict in favor of the plaintiff for $2,000. The defendant filed its motion for a new trial, which was overruled by the court. It saved all necessary exceptions, gave notice of appeal, perfected this appeal and appears here as plaintiff in error. For convenience, the parties will be referred to as they appeared in the lower court.

The defendant set up 17 separate and distinct grounds in its motion for a new trial. The petition in error filed in this court sets out 23 specifications of error. It will not be necessary to set these out in detail. In defendant insurance company's brief it presents its argument under five separate specifications of error as follows:

"1. The plaintiff was not entitled to recover on the policy of insurance, for the reason that the same had been canceled.

"2. The beneficiary had no vested interest in the policy and her consent to its surrender was not necessary.

"3. The plaintiff in error, having ascertained within the year the falsity of an-

swers made in the application had the right to cancel the policy.

"4. The court's instructions were erroneous and prejudicial.

"5. The court should have given the instruction requested by defendant."

We will consider the first and third specifications of error together.

The petition of the plaintiff alleges that George D. Thayer made application to the defendant life insurance company on November 19, 1915, for a policy of insurance. That on January 5, 1916, defendant insurance company issued policy No. 86,977 in the sum of $2,000 on the life of the said George D. Thayer and named the plaintiff as beneficiary therein. That the policy bore date of January 5, 1916, and the premium was paid thereon to January 5, 1917. That George D. Thayer died on December 14, 1916. That plaintiff could not set out a copy of the policy, for the reason that H. Clark Thayer had delivered the policy to one Smith, who was the agent of the defendant insurance company, but the petition asked that the defendant insurance company be required to set out a copy of the policy.

We now quote from the insurance company's brief:

"The insurance company filed an answer to the amended petition, which consisted, first, of a general denial, and admitted that George D. Thayer made application in writing for a life insurance policy with it, and admitted that it executed and delivered to Thayer, policy No. 86,977, in the sum of $2,000, and further alleged that the policy was delivered subject to the terms and provisions therein incorporated, and subject also to the written application of George D. Thayer attached thereto, and made a part of said policy, together with all statements in the application. It attached thereto a copy of the policy of insurance, which was identified as "Exhibit A." The answer further denied that the note was accepted by the general agents with the approbation of the defendant company in full satisfaction of the first annual premium, and denied that any false and fraudulent representations were made to H. Clark Thayer, and denied that Smith made any statement which he knew to be false and denied that H. Clark Thayer relied upon any false statement or misrepresentation, but admitted that H. Clark Thayer delivered the insurance policy to the defendant company for cancellation, that the same was canceled, and that thereafter the policy of insurance was not in effect, and that this occurred during the month of March, 1916. The answer further denied that the insurance policy was in full force and effect at the date of George D. Thayer's death, and denied that the company was indebted to Hazel Thayer in any sum, or that she was entitled to recover from it any sum whatever by reason of the insurance of the policy."

The defendant first contends that the insurance policy was canceled.

The evidence discloses that George D. Thayer and his father, H. Clark Thayer, were partners and engaged in the business of music dealers at Clearfield, Pa., prior to and at the time that George D. Thayer made application for the policy of insurance which is in controversy in this action. They continued in such business until sometime the latter part of March, 1916, when the firm became financially embarrassed, and was thereafter declared a bankrupt. That in the latter part of March, 1916, George D. Thayer left Clearfield, Pa. Thereafter T. Guerney Smith, a member of the firm of Smith & Bratton, who were the agents for the defendant insurance company at Clearfield, called on H. Clark Thayer and induced the said H. Clark Thayer to go to the private desk of George D. Thayer and take from his private files or papers the policy of insurance and deliver it to said Smith. That Smith forwarded the policy of insurance to the office of the defendant insurance company, where it was marked canceled. Neither George D. Thayer nor his wife, Hazel Thayer, who was named as the beneficiary in said policy, consented to the surrender of the policy to Smith or its cancellation by the insurance company.

At the time of the delivery of the policy to George D. Thayer, he executed and delivered to Smith & Bratton his note in the sum of $72.06, payable at a future date, in lieu of paying in cash the first year's premium on the policy. Smith & Bratton remitted to the defendant insurance company the amount due it for such first year's premium less their commission for obtaining the insurance. The execution and delivery of the note by Thayer was sufficient consideration for the insurance contract. The insurance company accepted the risk, issued and delivered the policy to the insured; he obligated himself to pay the first year's premium by executing and delivering his promissory note therefor to the agents of the insurance company, which they accepted. This constituted a completed contract, and the rights and obligations of both parties were fixed by the terms of the note and policy. The insured was obligated to pay his promissory note according to its terms. The

insurance company was obliged to perform the terms of the insurance contract, unless relieved by mutual consent of the parties or by operation of law. The policy contains the following incontestability clause:

"Incontestability: This policy and the application therefor, a copy of which is hereto attached, constitute the entire contract between the parties. The policy contains no restrictions upon the insured in respect to occupation, residence or travel and shall be incontestable after one year from its date, except for nonpayment of premium and except for violation of any conditions relating to military or naval service in time of war. All statments made by the insured· in the application for this policy shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall avoid this policy unless it is contained in the written application hereof."

This clause is not a short term statute of limitation, but is a constituent part of the contract. The insurance company agreed with the insured, if he would buy this policy for the benefit of his wife, it would not contest the payment of the insurance money after the expiration of one year from the date of the policy.

The defendant assumed this clause gave it the arbitrary right to cancel the policy at any time within the year, regardless of the rights of the insured. This clause does not mention cancellation, it provides the conditions under which the policy shall be incontestable. Webster's International Dictionary defines these words as follows:

"Contest: Earnest struggle for superiority, defense, victory, etc.; competition; emulation; strife or argument."

"Cancel: To annul or recall. To mark out by a cross line or lines; to strike out; to blot out or obliterate; specif., of legal documents, to annul, or make void or invalid, by such marking, or (by extension) in any way."

To cancel presupposes power or authority to do the act—cancel the contract. To perform the physical act of canceling a contract by obliterating it, drawing lines through it to strike it out, or by writing upon it "Cancelled," without the authority to cancel it, is a nullity, and the contract remains in full force and effect. This clause does not even purport to give the insurance company authority to cancel the contract. It may only contest it under certain conditions and upon certain grounds and within a specified time. A contest is an earnest struggle for superiority, or a defense. Reserving in a contract the right to contest any of its terms or provisions presupposes the right to resist such contest and that such contest shall take place before some person or tribunal with power and authority to decide the questions raised by such contest.

Section 989, Revised Laws of Oklahoma 1910, provides:

"The destruction or cancellation of a written contract, or of the signatures of the parties liable thereon, with · intent to extinguish the obligation thereof, extinguishes it as to all the parties consenting to the act."

Under the above statutes the arbitrary act on the part of the insurance company without the consent of the insured did not cancel the contract. The rule governing the rights of the defendant to rescind or cancel the contract is very ably defined in vol. 6, R. C. L. 921, as follows:

"Persons competent to contract can as validly agree to rescind a contract already made as they could agree to make it originally. However, as a contract is made by the joint will of two parties, it can be rescinded only by the joint will of the two parties. It is obvious that one of the parties can no more rescind the contract. without the other's express or implied assent, than he alone can make it. ·But if the parties agree to rescind the contract, and each one gives up the provisions for his benefit, the mutual assent is complete, and the parties are then competent to make any new contract ·that may suit them. Where the parties themselves have provided the terms on which their contract · shall be abrogated, neither can dispense with them, without the consent of the other." McAllister-Coman Co. v. Matthews, 167 Ala. 361, 52 ¡South. 416, 140 A. S. R. 43; Ingham Lumber Co. v. Ingersoll, 93 Ark. 447, 125 S. W. 139. 20 Ann. Cas. 1002; Olmstead v. Bach (Md.) 25 Atl. 343, 18 L. R. A. 53, reversed on other grounds on rehearing, 78 Md. 132, 27 Atl. 501, 44 A. S. R. 273, 22 L. R. A. 74: Fay v. Oliver, 20 Vt. 118, 49 Am. Dec. 764; Shriner v. Craft, 166 Ala. 146, 51 South. 884. 139 A. S. R. 19, 28 L. R. A. (N. S.) 450; Morrow v. Campbell, 7 Port. (Ala.) 41, 31 Am. Dec. 704; Note: 74 Am. Dec. 658; Williamson v. Hill. 154 Mass. 117, 27 N. E. 1008. 13 L. R. A. 690; Moore v. Shenk, 3 Pa. St. 13, 45 Am. Dec. 618; Cummer v. Butts. 40 Mich. 322, 29 Am. Rep. 530; Grafton Bank v. Woodward, 5 N. H. 99, 20 Am. Dec. 566: Perrine v. Cheeseman, 11 N. J. L. 174, 19 Am. Dec. ¯388; Noble v. Ward, L. R. 2 Exch. 135, 36 L. J. Exch. 91, 15 W. R. 520, 6 Eng. Rul. Cas. 563, and note; Note: 74 Am. Dec. 658; Falls v. Carpenter, 21 N. C. 237, 28 Am. Dec. 592.

·The officers or agents of the insurance company may hear something· concerning

the insured which, if true, would amount to a fraud on the insurance company perpetrated by making false answers to some of the questions in the application. Had the insurance company heard of these reports before it issued the policy, it probably would not have issued it. But having accepted the risk, issued the contract of insurance, its right to cancel the policy depended on whether these answers in the application were true or false, and if false, whether they amounted to fraud in procuring the policy. If the answers made by the insured in his application for the policy were false to such an extent as to constitute a fraud upon the insurance company, this would be grounds for the cancellation of the policy, but the insurance company is not the sole judge of the falsity of the answers or whether a fraud had been perpetrated upon it. The insured purchased the policy of insurance for a consideration, and he had a right to assert the truthfulness of his answers, resist the charge of fraud, and have these questions judicially determined. Assuming the beneficiary had no vested interest, the insurance company could cancel the policy at any time with the consent of the insured. If the insured did not consent, then the remedy of the insurance company was to bring an action to cancel the policy on the ground of fraud or falsity of answers; but under the incontestability clause in the policy such action must be brought within one year from its date.

In Plotner v. Northwestern Nat. Life Ins. Co. (N. D.) 183 N. W. 1000, the policy was issued July 28, 1919; the insured died December 15, 1919. On July 31, 1920, the beneficiary instituted an action to recover on the policy. On this state of facts the court said:

"It clearly appears, and in fact it is indisputable, that more than one year had elapsed since the issuance of the policy before any act or action was taken by the defendant to contest it. Thus the defendant thereafter is, by the terms of its contract, precluded from voiding the policy for any cause whatever, except failure to pay the premium as provided in the policy. * * *

"The incontestability clause is one, no doubt, used by the defendant as an inducement to those desiring to purchase insurance. It, no doubt, points out to them, by its agents, that by the terms of the policy after the expiration of the year there can be no defense of any kind or character interposed against the collection of the amount specified in the policy, in case the death of the insured should

occur and proceedings were had to collect the amount specified in the policy, except only for the nonpayment of premiums. The defendant ought not be permitted to lull the insured into a feeling of security by the use of the incontestability clause, and then endeavor to avoid its contract when death has forever sealed the lips of the insured, after having had the time specified by that clause to rescind the whole contract, which it wholly failed to do. * * *

"So by analogy it would appear that, where as in this case the defendant specified that after the expiration of one year the policy would be incontestable, the premium having been fully paid and policy being in full force and effect from its date, unless it rescinded and repudiated it within one year from its date, thereafter, under its stipulation, it had no defense against the payment of it, excepting only for the nonpayment of premiums. It permitted the year and more to expire before it took any action to avoid and rescind the policy, and, there being no default in premium, it has, as before stated, no defense to the collection of the full amount of it. The incontestability clause is a part of the policy which is in evidence. The entire contract, including that clause, is to be construed to ascertain the intentions of the parties. Further discussion cannot further clarify this particular point. The intent and language of the clause is so plain that it construes itself. It is susceptible of but one meaning, and that is such as we have accorded it."

The case of Mutual Life Ins. Co. of New York v. Buford et al., 61 Okla. 158, 160 Pac. 928, covers nearly all the questions raised by this appeal. We quote the paragraphs of the syllabus which are applicable:

"3. Where a policy of life insurance contains a provision that after two years from date of its issue said policy is incontestable, such provision is not a waiver, but a condition, and where such condition is not specifically pleaded in the petition, but a copy of such policy of insurance is attached as an exhibit to and made a part of said petition, such condition as to incontestability of such policy of insurance is sufficiently pleaded.

"4. Where the only defense interposed to an action on a life insurance policy, containing a condition of incontestability after two years from date of policy, is a breach of the warranties in the application for the issuance of the policy, such defense pleaded more than two years after the date of issue of the policy does not constitute a valid defense.

"5. After the issue of a policy of insurance, the insurer cannot cancel such

policy on the ground of. breaches of the warranties in the application for ..insurance, except with the consent of the insured and beneficiary named in the policy, who has a vested interest in the policy, except in the manner provided in. the policy, unless proper legal action is taken prior to the time named in the policy in which the same became incontestable.

"6. An insurer cannot cancel a policy of life insurance against the objections of the insured by declaring the policy canceled upon the ground that the insured falsely represented his family history, occupation, place of residence, and use of intoxicating liquors, and tendering back to the insured the premiums paid by him; there being no provision in the policy authorizing the insurer to thus cancel the policy.

"7. Where the petition states, and the evidence shows, a good cause of action upon a policy of life insurance, containing a condition of nonforfeiture after. two years from the date of issue of the policy, and the only defense pleaded is a breach of the warranties contained in the application for the insurance, pleaded more than two years after the policy became incontestable, such breach constitutes no defense, and the court should direct a verdict for the plaintiff."

One of the defenses set up by the defendant insurance company is that the insured made false answers to certain questions in the application for insurance. This was submitted to the jury under proper instructions, and the jury by its verdict found against the defendant insurance company. The answer setting up this defense was not filed in court until October 19, 1917, which was more than one year after the policy was issued. Under the above quoted clause in the policy, it was incontestable after one year from its date, except for nonpayment of premiums and except for violation of any conditions relating to naval or military service in time of war.

"A provision in a life insurance policy that this (and the application therefor) constitutes the entire contract between the parties and shall be incontestable after one year from the date of its issue, except for nonpayment of premiums, includes fraud on the part of the insured in obtaining the insurance, and, after one year from the date the policy, is issued, the insurance company cannot plead such fraud as a defense to an action brought by the beneficiary under the policy to recover the amount thereof, or in a cross-action to cancel the policy and rescind the insurance contract. Metropolitan Life Ins. Co. v. Peeler, 71 Oklahoma, 176 Pac. 939."

Under the above authorities the policy was not canceled, and the defendant did not have an arbitrary right to cancel it. This disposes of the third ground of error:

"The plaintiff in error, having ascertained within the year the falsity of answers made in the application, had the right to cancel the policy."

In view of the fact that we have already decided the policy of insurance was not canceled, it is unnecessary for us to present the second ground of error.

"The beneficiary had no vested interest in the policy and her consent to its surrender was not necessary."

We have examined the instructions given by the court which are complained of in defendant's fourth ground of error and the instruction requested by defendant and refused by the court, which is complained of in defendant's fifth ground of error. We do not find any error in the instructions given or that the court committed error in refusing to give the instruction asked for and refused.

The evidence failed to show that the insurance company had any right to cancel the policy at the time it claims to have canceled it. Its attempt to cancel the policy was an arbitrary act without either right or authority, and was therefore a nullity.

Under the authorities above cited it could not plead as a defense the. falsity of answers contained in the application, or fraud in procuring the policy, because not pleaded within one year from the date of the policy.

Under these facts it would not have been error had the court given the jury a peremptory instruction to find for the plaintiff.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

HARRISON C. J., and KANE, JOHNSON, ELTING, and KENNAMER, JJ., concur.